IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00667-MSK-KLM

SIRRLOVE WILLIAMS,

    Plaintiff,

v.

MAJOR DIGGINS,
MAJOR CONNORS,
SGT. DAUGHTRIE.

    Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for T.R.O.** [Docket No. 58; Filed March 25, 2009] (the "Motion").  Defendants filed a Response in opposition to the motion on April 13, 2009 [Docket No. 66].  Rather than file a reply, Plaintiff sought and received permission to supplement his Motion [Docket No. 77].  The Court directed the parties to provide further briefing on Plaintiff's Supplement [Docket No. 79].  Defendants filed a Supplemental Response on May 13, 2009 [Docket No. 81].  While Plaintiff did not file a reply, the Court notes that Plaintiff filed a pleading purporting to object to Defendants' Supplemental Response [Docket No. 84], and the Court considers this as his Reply for the purpose of resolving the Motion.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation.  The Court has reviewed the Motion [#58], the Supplement [#77], Defendants' Responses [##66 & 81], Plaintiff's Reply [#84],

the entire case file, the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#84] be **DENIED**.

## I. Summary of the Facts

Plaintiff, who is a pretrial detainee proceeding *pro se*, filed an action pursuant to 42 U.S.C. § 1983 asserting that Defendants inhibited his freedom of religion, confined him in segregation and wrote mocking letters against him for no reason, denied him privileges normally provided to other inmates, and prevented him from corresponding with his attorney in his underlying criminal matter. *Complaint* [#9] at 3-6. Plaintiff is currently incarcerated at the Denver County Jail in Denver, Colorado. The individual Defendants are employed by the City of Denver and work at the Denver County Jail. In the Motion, Plaintiff contends that Defendants are engaging in a "campaign of harassment" which is affecting his sanity and state of mind. *Motion* [#58] at 1. Specifically, Plaintiff contends that in March 2009, he became "sick and dizzy" due to a floor cleaning solution used at the jail without proper ventilation. Plaintiff also alleges that he is being segregated as a punishment for filing this lawsuit, and that Defendant Connors "sends by mail sarcastic statements" made against him and refuses to respond to his grievances. *Id.* at 3, 8.

In his Supplement, Plaintiff contends that he was exposed to a "jail condition" that caused an unreasonable risk of serious harm, was denied access to the law library, was denied mail, was placed in the "hole" for thirty days after he was attacked by another inmate, was denied exercise outside his cell, was only allowed three showers a week, and was denied an inhaler for twenty minutes when he had trouble breathing. *Supplement*

2

[#77] at 1-3. Plaintiff claims that "all of the above is retaliation and harassment of a pretrial detainee." *Id.* at 2. Further, Plaintiff argues that "[t]he harassment could cause a mental brake [sic] down and without a T.R.O. it's not going to stop." *Id.* at 3.

In Defendants' Response, they contend that the Motion, which is supported only by conclusory, unverified statements, does not demonstrate that Plaintiff will suffer irreparable harm or that he is likely to succeed on the merits of his underlying case. *Response* [#66] at 2-3. In Defendants' Response and Supplemental Response, they contend that the harm alleged in the Motion and Supplement are not supported by the documentary evidence attached to either pleading showing (1) that Defendants regularly responded to Plaintiff's grievances, (2) that Plaintiff has been provided access to the law library, (3) that Plaintiff has received ample medical care, and (4) that the floor cleaner used by Defendants is a common cleaner approved for use at the facility. *Id.*; *Supp. Response* [#81] at 4, 6. They also argue that Plaintiff's other allegations, including his allegations about the floor cleaner, are meritless. *Supp. Response* [#81] at 4-6. Finally, they argue that the Motion and Supplement should be denied because they seek to remedy alleged conduct which is not at issue in Plaintiff's operative Complaint. *Id.* at 2-3.

As a preliminary matter, it appears that all of the conduct that is the subject of Plaintiff's Motion and Supplement occurred after the Complaint was filed and raises claims that are distinct from the events set forth in the Complaint. For instance, the Complaint raises three claims, a First Amendment claim related to Plaintiff's religious freedom, a Fifth Amendment claim related to an instance where Plaintiff was placed in segregation and his

3

treatment by Defendants Connors and Daugherty,[1] and a First Amendment claim related to Defendant Daugherty's denial of access to Plaintiff's criminal attorney. Although Plaintiff raises similar allegations regarding placement in segregation and abusive behavior that occurred since the filing of his Complaint, i.e., new segregation, new mocking statements that were made, denial of medical care, outside exercise, and daily showers, and exposure to the smell of a pungent cleaning solution, this conduct is distinct from the incidents at issue in his Complaint. To the extent that Plaintiff's new allegations are not related to the conduct or claims previously asserted, I technically need not consider those here. *See Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *16 (D. Colo. May 27, 2008) (unpublished decision) (noting that a preliminary injunction is inappropriate to address wrongs unrelated to Plaintiff's underlying claims in his operative complaint).

However, I note that Plaintiff claims that all of the adverse actions taken against him since the filing of his Complaint were undertaken in retaliation for the case's filing. Arguably, therefore, the conduct at issue in the Motion is related to the allegations contained in his Complaint and the Court considers the Motion on its merits. Further, I note that to the extent the Motion raises issues related to Plaintiff's access to the Court, Plaintiff may raise such issues at any time despite that he did not make a similar claim in his underlying pleading. *See Ayyad v. Gonzales*, No. 05-cv-02342-WYD-MJW, 2008 WL 203420, at *3 (D. Colo. Jan. 17, 2008), *vacated on other grounds*, 2008 WL 2955964 (D. Colo. July 31, 2008) (unpublished decision). This reinforces my decision to resolve the Motion on its merits.

---

[1] Although Plaintiff spells Defendant Daugherty's name "Daughtrie," I use the correct spelling of this party's name here.

## II. Standard for Injunctive Relief

As a preliminary matter, because Plaintiff is proceeding *pro se*, the Court must construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigants' advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

Further, I note that although the Motion is labeled as a request for "T.R.O," because Defendants were given notice and an opportunity to respond, the Court analyzes the Motion under the standards for entering a preliminary injunction. Fed. R. Civ. P. 65(a) and (b) governs preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Comm'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. 2001) (unpublished decision) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed.1995)).

Here, I find that Plaintiff is unable to meet his burden to show that a preliminary injunction is necessary. Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would

not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.*

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Plaintiff seeks a preliminary injunction which would require Defendants to stop their "campaign of harassment for filing a suit" by terminating their use of a particular floor cleaner, providing him outside exercise, ample showers, medical care, and unfettered access to the law library, suspending their sarcastic statements directed at his person, etc. *Supplement* [#77] at 1-3. Given Plaintiff's allegations and the relief that he seeks, the relief sought would alter the status quo rather than preserve it and would also require Defendants to act. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1259,

1261. Therefore, "the right to relief must be clear and unequivocal." *Id.* at 1258.

Additionally, I must consider well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 269-70 & n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

### III. Analysis

**A.    Irreparable Injury**

To obtain injunctive relief, Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Schrier*, 427 F.3d at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman*

*v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm.  *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm."  *Id.* (citation omitted).  Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable."  *Vega v. Wiley*, 259 Fed. Appx. 104, 106 (10th Cir. 2007) (unpublished decision).  Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiff fails to adequately show that he is facing immediate and irreparable harm. While the allegations contained in the Motion and Supplement are vast, they are nothing more than allegations and are unsupported by Plaintiff's Complaint, the documentary evidence attached to his pleadings, or the affidavit attached by Defendants.  Further, I note that many of Plaintiffs' allegations primarily relate to past conduct that has already occurred and is not ongoing, i.e., Defendants' alleged (1) thirty-day placement of Plaintiff in segregation for being involved in a fight; (2) previous sarcastic statements; (3) denial of an inhaler for a twenty-minute period; and (4) use of a pungent floor cleaner on a particular day.  *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunction relief only . . . it is insufficient for them

to demonstrate only a past injury")).[2]

Moreover, assuming Plaintiffs allegations are true as to any ongoing conduct attributed to Defendants, such allegations fail to rise to the level of conduct constituting irreparable harm. For instance, Plaintiff does not necessarily argue that he continues to suffer harm from any of the alleged adverse actions taken by Defendant in isolation. Rather, he contends that due to the totality of this conduct he may suffer a mental break down sometime in the future such that it may effect his state of mind at his trial (it is unclear whether he means his criminal trial or the trial that may be held in this case). For the most part, Plaintiff's conjectural and unsubstantiated allegations fail to demonstrate harm that exceeds more than "merely serious or substantial" harm. *See Connecticut*, 282 U.S. at 674 (noting that injunctive relief will not lie where alleged injury is merely feared to occur at some time in the future). While the Court believes that Plaintiff is genuinely unhappy with his treatment, there is no evidence to suggest that such unhappiness is reasonable or likely to lead to irreparable injury. In addition, I note that in Plaintiff's underlying suit, he seeks only monetary damages, not injunctive relief. There is no credible allegation that Plaintiff's alleged injuries are not capable of being fully remedied by money damages. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

---

[2] For instance, I note that Plaintiff filed a declaration purporting to be from another inmate indicating that he was also bothered by the strong-smelling chemicals used to the clean the floor on that same day [Docket No. 76]. As a preliminary matter, the Court has warned Plaintiff that the filing of declarations or notices which are not attached to motions will not be considered [Docket Nos. 62 & 75]. In any event, whether the chemicals were strong on this day or whether Plaintiff was denied his inhaler for a twenty-minute period is not the sort of alleged injury that the Court can remedy via injunctive relief. It is a past injury that is not ongoing. *See Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiff[] from irreparable injury that will surely result . . . .").

Further the Court notes that the type of discomfort about which Plaintiff complains "is 'part of the penalty that criminal offenders pay for their offenses against society. . . . [O]nly those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis" for a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (noting that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" (citation omitted)). For instance, mere sarcastic statements directed at Plaintiff by Defendants simply do not rise to the level of a constitutional violation or irreparable injury. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995) (noting that the protections of the constitution "necessarily excludes from constitutional recognition *de minimus*" verbal abuse that does not rise to the level of threats of violence or severe physical intimidation).

The Court gives greater consideration to Plaintiff's allegations that he is being denied adequate access to the law library to litigate his case.[3] If these allegations were supported by some evidence, they might support a finding of irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, at 373 (1976) (noting that "the loss of First Amendment freedoms, for even

---

[3] To the extent that Plaintiff also argues that the "mail room" is not property handling his legal mail, none of the Defendants are alleged to work in mail room or to supervise the mail room staff and, therefore, injunctive relief cannot lie as to this claim. *See* Fed. R. Civ. P. 65(d) (noting that injunctive relief is only available as to parties); *see also Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that where "entry of injunctive relief in [Plaintiff's] favor would have no effect on the [D]efendants' behavior," either because a claim is moot or the Court has no jurisdiction over the wrongdoer, Plaintiff's motion for preliminary injunction must be denied); *see also Teague*, 2008 WL 2228905, at *16 (noting that in order for injunctive relief to bind nonparties, plaintiff must provide "specific allegations of active concert or participation by the named [d]efendants"). In any event, given the frequent filings this Court receives from Plaintiff, including pleadings that appear to relate to his discovery efforts and his underlying criminal case, the record does not support Plaintiff's conclusory allegation that his legal mail is not being properly handled.

minimal periods of time, unquestionably constitutes irreparable injury"). However, I need not accept any allegations as true where there is no factual support for them. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-51 (2009) (noting that "naked assertions devoid of further factual enhancement" do not satisfy a litigant's pleading requirements and "disentitles [him] to the presumption of truth" (citation omitted)). As Defendants aptly note, Plaintiff has cited ample case law in his pleadings and his attached documents evidence his regular access to the law library [Docket Nos. 58 at 5, 25; 77 at 10, 15]. *Supp. Response* [#81] at 4. Further, I note that Plaintiff does not set forth any motion he was prevented from filing or responding to in this case as a result of his alleged lack of access to the law library. *See Teague*, 2008 WL 2228905, at *16 (noting that access to the court claim for injunctive relief fails where plaintiff does "not allege[] or demonstrate[] that any denial or delay . . . prejudiced him in pursuing nonfrivolous litigation"). Moreover, although the record contains general allegations that Plaintiff is dissatisfied with the amount of access he is given to the law library, the record also evidences that Plaintiff is frequently a "no show" during scheduled law library time and that he refuses to follow the facility procedure to obtain law library time [Docket No. 58 at 5, 25]. Simply, claiming an injury from an alleged deprivation, but not explaining how such injury has caused harm, is insufficient to raise an irreparable injury. *See generally Ashcroft*, 129 S. Ct at 1949-54 (holding that a litigant's pleading responsibilities require "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Given that I find no support for Plaintiff's contentions or – even if such contentions were true – that irreparable injury is imminent, injunctive relief is subject to denial on this basis alone. *See Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (inferring that the failure to show irreparable injury is sufficient ground, by

itself, to deny injunctive relief). In the interest of completeness, the Court also briefly addresses the remaining factors applicable to determine whether a preliminary injunction should enter.

### B. Balance of Harm and Public Harm

Even if Plaintiff could demonstrate some injury, he must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Plaintiff does not address the balance of harm in his Motion and appears to assume that the Court can control Defendants' conduct across wide-ranging areas at minimal impact to Defendants. This assumption fails to take into account the important issue of the financial and logistical burdens imposed on Defendants if they were ordered to treat Plaintiff any differently. As noted above, the Court's interference with Defendants' day-to-day decisions regarding how to manage this Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from how Defendants manage all other inmates, would significantly undermine their discretion and autonomy. *See Taylor*, 34 F.3d at 269-70. While Plaintiff expresses the preference for better treatment, e.g., more showers, no more sarcastic statements directed at him, faster responses to grievances, etc., he fails to articulate how his preference could be effectively carried out and monitored with minimal impact on Defendants and the Court. Further, the Court notes that the documents attached to Plaintiff's pleadings demonstrate Defendants' responsiveness to Plaintiff's concerns such that the extreme action of Court intervention would not appear to be warranted. Accordingly, the Court finds that Plaintiff has failed to

make the requisite showing to tip this factor in his favor.

Next, I note that Plaintiff fails address the impact of an injunction on the public in this instance. The Court notes that the public would ultimately have to bear the cost of any required changes in Defendants' conduct, e.g., the provision of extra showers and the disuse of certain floor cleaner and the acquisition of new floor cleaner. While in this isolated case, such cost may be minimal, the Court finds that the public interest is best served by upholding the bright-line rule that Court interference is limited to only those extreme cases where irreparable injury is clear. The Court's monitoring of and control over Defendants' day-to-day treatment of Plaintiff and the management of the facility's law library, cleaning services, medical services, grievance procedures, etc. would be adverse to the public interest, and the Court finds that Plaintiff has failed to meet his burden in relation to this factor. *See Teague*, 2008 WL 2228905, at *17 (noting that the public is adversely impacted by "the court monitor[ing] such matters as making copies, showering, verbal harassment, television, recreation, cleanliness of cells, assignment of cells," etc.).

**C.    Substantial Likelihood of Success on the Merits**

Finally, Plaintiff must show that he has a substantial likelihood of success on the merits of his claims. *Schrier*, 427 F.3d at 1258. Plaintiff brings both First and Fifth Amendment claims regarding his treatment by Defendants. *Complaint* [#9] at 3-6. In relation to the present Motion and Supplement, Plaintiff fails to specifically address whether he would succeed on the merits of any of his underlying claims, except to note in a conclusory fashion that he "feel[s] [his] chances are strong at trial." *Supplement* [#77] at 3; see *Hall*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without

13

supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186-MSK-MJW, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (unpublished decision) (holding that conclusory allegations will not support a motion for injunctive relief). Although Plaintiff contends that he has clearly shown that his constitutional rights have been infringed upon, I disagree. First, Plaintiff has failed to set forth sufficient proof, at this stage, that he is likely to succeed on the merits of the claims asserted in his operative Complaint. Second, given the tenuous nature of the relationship between Plaintiff's current allegations and the claims underlying his Complaint, even assuming the truth of the allegations Plaintiff makes here, these allegations do not tend to make his underlying claims any more or less meritorious. *See Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (noting that plaintiff fails to show substantial likelihood of success where he cannot provide "clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief"); *see also Teague*, 2008 WL 2228905, at *16 (noting that injunctive relief should not lie to address conduct that occurred after complaint was filed).

Finally, considering whether Plaintiff is likely to succeed on the merits of his present claims, i.e., denial of access to the Court and retaliation, I note that I have already found that Plaintiff's allegations about access to the law library are unsupported by the record. In relation to his general retaliation claim, I note that "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998). Further, an inmate is not "inoculated from the normal conditions of confinement

experienced by [inmates] serving time in prison merely because he is engaged in protected activity." *Id.*; *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001) (requiring more than mere conclusory statement that inmate has been retaliated against). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Reviewing Plaintiff's attached documents reveals that while Plaintiff has engaged in his own campaign of complaints regarding the conditions he is subjected to, other than his conclusory belief, there is no credible relationship between his conditions and Defendants' alleged intent to retaliate against him. For instance, Defendants informed Plaintiff that the floor cleaning solution was typically used by them and while did possess an odor, was used throughout the facility on that day not just outside his cell [Docket No. 77 at 10]. *See also Affidavit of Daugherty* [#81-3] at 2. In addition, Defendants informed Plaintiff that although he complained about the number of showers he was receiving, "[e]veryone in Bldg. 2 showers the same numbers [sic] of times per week" [Docket No. 58 at 5]. A final example of a lack of connection between Defendant's conduct and a retaliatory motive is Defendants' grievance response to Plaintiff's grievance that he is being treated differently from other inmates. Defendants informed Plaintiff that his classification level and number of privileges is directly tied to the crime he is charged with, his prior

history, his gang history, etc. [Docket Nos. 58 at 9; 77 at 13]. Based on such history, Plaintiff's conditions of confinement appear to be reasonable and not tied to any conclusory allegations of retaliation.[4]

### IV. Conclusion

Plaintiff has failed to carry his burden of establishing that the circumstances under which he is currently incarcerated give rise to a substantial risk of serious harm or place him in imminent danger. Accordingly, as Plaintiff has failed to satisfy the four prerequisites to obtaining a preliminary injunction, I respectfully **RECOMMEND** that the Motion [#58] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

---

[4] Given that neither Plaintiff's pleadings or attached documents support his factual or legal conclusions, it is unnecessary to conduct a hearing regarding Plaintiff's present claims. *See generally Edmisten v. Werholtz*, 287 Fed. Appx. 728, 732 (10th Cir. 2008) (unpublished decision) (recognizing that an evidentiary hearing is only required when appropriate or necessary); *Vega*, 259 Fed. Appx. at 106-07(noting that it was not an abuse of discretion for trial court to consider written pleadings to determine that the evidence was insufficient to support injunctive relief); *Prosper, Inc. v. Innovative Software Techs.*, 188 Fed. Appx. 703, 705-06 (10th Cir. 2006) (unpublished decision) (holding that when allegations related to request for injunctive relief are not supported by the record, no hearing is required); *see also Starter Corp. v Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999) (noting that a formal hearing on consideration of injunctive relief is not required when parties are given opportunity to fully brief the issue).

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 16, 2009

                                            BY THE COURT:

                                            s/ Kristen L. Mix
                                            U.S. Magistrate Judge
                                            Kristen L. Mix